BOOTH, Judge.
This cause is before us on appeal of appellant’s convictions for trafficking in cocaine by possessing 400 grams or more, a violation of Section 893.135(l)(b)3, Florida Statutes, and trafficking in cocaine by sale or delivery of more than 28 but less than 200 grams, a violation of Section 893.-135(l)(b)l, Florida Statutes. Appellant raises three issues on appeal: (1) the trial court erred in denying his motion for judgment of acquittal on Count I because the evidence failed to demonstrate that he was in actual or constructive possession of the cocaine seized from his motel room; (2) the court erred in allowing introduction of hearsay testimony; and (3) the convictions for Counts I and II violate double jeopardy principles because they are based on the same act. After careful consideration, we affirm as to each issue.
In September 1986, Gainesville police received information that “a bunch of Haitians” were selling crack cocaine out of local motels. Using a confidential informant as a go-between, an undercover police officer made contact with one of appellant’s code-fendants, Cebius Charles. Charles was one of several Haitians staying at the Florida Motel in Gainesville, and although Charles *348 had no crack, he claimed to know where to get it. He arranged a meeting between appellant and the undercover officer on the night of October 2, at the Florida Motel. Although appellant did not want to make a sale that night, the parties entered into preliminary negotiations. Because appellant was so intoxicated that he was unable to do the required math to fix a price, no purchase was consummated.
The next morning, Charles, the officer and the informant went looking for appellant.[1] When they found him, Charles entered appellant’s room for a brief time and emerged with a blue suitcase. The three men returned to the Florida Motel, where they opened the suitcase and found 103 “slabs” of crack weighing 159.8 grams.[2] While Charles was counting the money and crack, police made the arrest.
Meanwhile, appellant left his hotel room about a half an hour after the three men departed. Police stopped his car and arrested him, and later obtained his consent to search his room. Although appellant was arrested at 8:30 a.m., police did not arrive to search until 5:30 p.m. While assembling, they saw a woman exit the room. She was not interviewed or otherwise detained, and no charges were filed against her. Appellant told officers prior to the search that the woman had been staying with him in the room.
When police searched, they found 389.9 grams of crack in a bag hidden in a bed’s box spring. A separate piece of crack, some cocaine inside a napkin, and some money were found hidden under a sofa cushion. A beer can, converted into a crack pipe, was in plain view on a coffee table.
Appellant first argues that because the crack was hidden in jointly-occupied premises, the State’s case for Count I necessarily relied on constructive possession. We agree. Appellant further argues that because nothing in evidence directly linked him to the hidden crack and because the room was occupied by another person for several hours after appellant’s arrest but before the search, the evidence was legally insufficient to submit to the jury.
Under Florida law, “constructive possession exists where the accused without physical possession of the controlled substance knows of its presence on or about his premises and has the ability to maintain control over said controlled substance.” Brown v. State, 428 So.2d 250, 252 (Fla.1983), cert. denied, 463 U.S. 1209, 103 S.Ct. 3541, 77 L.Ed.2d 1391 (1983), quoting Hively v. State, 336 So.2d 127, 129 (Fla. 4th DCA 1976). “To establish constructive possession, the State must show the accused had dominion and control over the contraband, knew the contraband was within his presence, and knew of the illicit nature of the contraband.” Brown, supra, at 252, quoting Wale v. State, 397 So.2d 738 (Fla. 4th DCA 1981). “If the premises where contraband is found is in joint, rather than exclusive, possession of a defendant, however, knowledge of the contraband’s presence and the ability to control it will not be inferred from the ownership but must be established by independent proof.” Brown, supra, at 252, citing Wale, supra, and Frank v. State, 199 So.2d 117 (Fla. 1st DCA 1967). Where contraband is not in plain view, joint occupancy alone is clearly insufficient. Torres v. State, 520 So.2d 78 (Fla. 3d DCA 1988), citing Chappell v. State, 457 So.2d 1133 (Fla. 1st DCA 1984). See also Cortez v. State, 488 So.2d 163, 165 (Fla. 1st DCA 1986).
Appellant contends that the most he-can be convicted of is possession of the amount of crack taken from the suitcase, which is less than the 400 grams needed to support his conviction under Count I. Appellant’s argument focuses on the knowledge issue, and he maintains that the State produced no independent evidence affirmatively showing that he knew about the *349 389.9 grams of crack in the room. For our purposes, the question is whether circumstances other than appellant’s nonexclusive possession of the room were introduced at trial to create a jury question on appellant’s knowledge. See Wale v. State, supra, at 740, Giddens v. State, 443 So.2d 1087, 1089 (Fla. 2d DCA 1984), Winchell v. State, 362 So.2d 992, 995 (Fla. 3d DCA 1978). “Such proof may consist either of evidence establishing actual knowledge by the accused, or evidence of incriminating statements or circumstances from which a jury may lawfully infer knowledge by the accused of the drugs’ presence on the premises.” Winchell, supra, at 995, quoting Frank v. State, supra, at 121.
The State proved that appellant delivered a suitcase containing crack to an undercover police officer less than an hour before he was arrested. The State also proved that the suitcase came from appellant’s room. When the suitcase was seized, police discovered that the crack in it had unusual characteristics which made it particularly distinctive. Testimony by a laboratory analyst and photographs in evidence indicated that each slab was virtually identical to the others, as if made in the same mold. The slabs were of uniform height and width,[3] each about two inches long and approximately one-fourth inch thick. They all had the same yellowish-brown color. As stated by an analyst, they looked like French fries.
Unlike in the cases cited above, the drugs in the instant case were not a generic white powder or a generic green, leafy substance. Rather, they were an identifiable, processed product which was highly distinctive in appearance. The jury was entitled to find that the crack in the suitcase and that in the room were part of the same cache of uniquely-molded slabs, and to find that defendant had negotiated a sale shortly prior to his arrest. The evidence showed that appellant was negotiating the night before to deliver 150 pieces at $40 each. However, the undercover officer arrived with only $4,000. This was enough for 100 pieces, and 103 were found in the suitcase. Appellant’s ability to negotiate the 150-piece sale and consummate it with a delivery of as many pieces as his buyer had money for, was evidence of his possession as early as the night before, and ability to control the remaining crack found in the room. This is the “independent proof” the dissent suggests is lacking and was an appropriate “circumstance from which a jury might lawfully infer knowledge by the accused of the drugs’ presence on the premises,” Frank, supra at 121.
We hold that the State produced sufficient evidence to create a jury question on appellant’s knowledge of the crack found in his room and to support his conviction for possession of the amount charged under Count I.[4]
Appellant also contends that hearsay testimony was improperly admitted at trial. The error, if any, was harmless. Graham v. State, 479 So.2d 824 (Fla. 2d DCA 1985), McGriff v. State, 497 So.2d 1296 (Fla. 3d DCA 1986), review denied, 506 So.2d 1042 (Fla.1987). Our review of the record reveals that the objectionable testimony was, with one exception, cumulative to properly-admitted evidence. The instance involving noncumulative testimony was cured by the trial court’s prompt instruction to the jury that the statement could not be received for any purpose and must be disregarded.
As to the third issue that convictions under Counts II and III violate double jeopardy, we find no merit. The convictions did not stem from the same “act” of possessing while simultaneously delivering the suitcase, as argued by appellant. Rather, serial acts occurred. Appellant first obtained and possessed the aggregate amount in his room prior to delivering the suitcase. A second, separate act occurred when he placed part of the crack in the suitcase and distributed it.
Although the parties have not raised the issue, we have also considered *350 the rule of Carawan v. State, 515 So.2d 161 (Fla.1987), wherein the Florida Supreme Court ruled that multiple punishments for the same act are prohibited unless legislative intent indicates otherwise. That rule is inapplicable here because appellant’s first crime was completed when he obtained possession of the aggregate amount. Appellant’s second crime occurred when he distributed part of it. One commits the offense of trafficking by possessing a large quantity of drugs, and a further crime in distributing it.[5] Law enforcement’s dedicated efforts resulted in breaking up this drug operation, the capture of the various gang members, and, commendably, preventing the crack cocaine from reaching its intended victims.
AFFIRMED.
WENTWORTH, J., concurs.
ERVIN, J., dissents with written opinion.

. Appellant was not staying at the Florida Motel with the rest of the gang. Because he had his own room at a separate motel (Room 18, Apartment Inn) and the rest of the gang did not know where he was staying, the trio spent considerable time searching motel parking lots until they located appellant’s car and traced him.

. Appellant does not question the sufficiency of the evidence as to this cocaine.

. Unless they were broken.

. Accord Brown v. State, 519 So.2d 1045 (Fla. 4th DCA 1988).

. We also note Gordon v. State, 528 So.2d 910 (Fla. 2d DCA 1988), wherein the Second District stated at 911, n. 2:
It is important to note that the appellant did not possess more than this one cocaine rock. Possessing other rocks that he chose not to sell in this instant act of sale but which he kept in his possession for later possible use or sale would be a separate act for which he could be separately convicted and punished. See discussion infra p. 914.
Although in the present case one offense was based on possession of an aggregate amount of which a small part was also the cocaine involved in the separate charge of selling, the two offenses were distinct and sequential, not simultaneous, and evidence supported a conclusion that the portion sold had been a part of the larger quantity possessed by appellant before the sale and later recovered from his room.